FILED
CLERK

3/31/2020 10:43 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KENNETH IRVING, CURTIS SEDA, and JOHN
O'MEARA, as Trustees and Fiduciaries of the
LOCAL 463 PENSION FUND,

                          Plaintiffs,

          -against-

G. & G. INSTRUMENT CORP. and JOHN DOE,
COMPANIES 1-99,

                         Defendants.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
19-CV-1597 (JMA)(ARL)

**AZRACK, United States District Judge:**

Plaintiffs Kenneth Irving, Curtis Seda, and John O'Meara, as Trustees and Fiduciaries of the Local 463 Pension Fund (collectively, "Plaintiffs") moved for a default judgment against G. & G. Instrument Corp. ("G&G") and John Doe Companies 1-99 (collectively, "Defendants"). (ECF No. 12.) Upon review of Plaintiffs' motion and supporting evidence, the Court GRANTS the motion for default judgment as to G&G for the reasons set forth below.

### I.    BACKGROUND

The following facts are taken from the Complaint, (ECF No. 1), and are assumed to be true for purposes of this motion.

Plaintiffs, the trustees and fiduciaries of an employee benefit plan, the Local 463 Pension Fund (the "Fund"), filed this suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. The Fund is a "'multiemployer plan' within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37), and an 'employee pension benefit plan' within the meaning of Section 3(2) of ERISA, 29 U.S.C. § 1002(2)." (ECF No. 1 at 2.)

1

Defendant G&G was a party to a series of collective bargaining agreements with Local 463, IUE-CWA, AFL-CIO, which bound G&G to the Local 463 Pension Fund's Agreement and Declaration of Trust (the "Trust Agreement"). Pursuant to the collective bargaining agreements, G&G made contributions to the Fund on behalf of its employee participants. (Id. at 3.)

Plaintiffs allege that "[o]n or about December 31, 2015, G&G permanently ceased to have an obligation to contribute to the Fund, which resulted in its 'complete withdrawal' from the Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C. §1383(a)." (Id.) Because of G&G's withdrawal, Plaintiffs argue that the Fund was entitled to assess withdrawal liability against G&G.

On September 28, 2017, the Fund sent notice to G&G regarding its withdrawal liability. The letter outlined the amount of withdrawal liability G&G owed, set forth a payment schedule, and demanded an initial payment by December 1, 2017. (ECF No. 12-10.) The letter also required G&G to provide information within thirty days "about whether it was a member of a group of trades or businesses under common control ('controlled group') within the meaning of ERISA Section 4001(b)(1) and Sections 414 and 1563 of the Internal Revenue Code and, if so, the names and addresses of each entity within the controlled group." (ECF No. 1 at 3–4.) To date, G&G has not responded to the Fund's letter, provided the requested information, or paid the withdrawal liability.

On March 20, 2019, Plaintiffs filed suit against G&G. Plaintiffs also named "John Doe Companies 1-99" as defendants, describing them as "fictitious defendants representing any trades or businesses that were in the controlled group of G&G as of the date of G&G's complete withdrawal from the Fund." (Id. at 3.) The Complaint alleges that G&G's failure to remit the payment in response to the September 28, 2017 letter constituted "a failure to make withdrawal liability payments under ERISA Section 4301(b) and a violation of Section 515 of ERISA, 29

U.S.C. § 1145, thereby giving rise to an action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3)." (Id. at 5.) Plaintiffs sought withdrawal liability totaling $274,633.91, interest, liquidated damages, attorneys' fees, and costs. (Id.)

## II. Discussion

### A. Defendant Defaulted

G&G was properly served in this action, but has not appeared, answered, responded to the instant motion for default judgment, or otherwise defended this action. Accordingly, the Clerk of Court issued a certificate of default against G&G on May 17, 2019. (ECF No. 10.)

### B. Liability

When a defendant defaults, the Court is required to accept all of the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). However, the Court must also determine whether the allegations in the complaint establish the defendant's liability as a matter of law. Id.

#### 1. Applicable Law

Plaintiffs allege that G&G failed to make withdrawal liability payments within the prescribed time. When a "plan sponsor seeks withdrawal liability payments, it must 'show only that it complied with statutory procedural requirements.'" Division 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co., Inc., 270 F. Supp. 3d 593, 608 (E.D.N.Y. 2017) (quoting Trs. of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc., No. 03-CV-4530, 2004 WL 67480, at *2 (S.D.N.Y. Jan. 15, 2004)).

Pursuant to ERISA, when an employer withdraws from a plan, "the fund is vested with authority to determine the amount of withdrawal liability. It must then notify the withdrawing employer of its withdrawal liability, set a payment schedule, and formally demand payment."

3

Gesualdi v. Seacoast Petroleum Prods., Inc., 97 F. Supp. 3d 87, 97 (E.D.N.Y. 2015) (citation omitted).  See also 29 U.S.C. §§ 1382, 1399.

Within ninety days of an employer receiving notification from a plan, "the employer can request that the plan sponsor: (1) 'review any specific matter relating to the determination of the employer's liability and the schedule of payments;' (2) 'identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer;' and (3) 'furnish any additional relevant information to the plan sponsor.'"  Division 1181, 270 F. Supp. 3d at 607 (quoting 29 U.S.C. § 1399(b)(2)(A)).  ERISA provides that if an employer seeks to dispute the plan's calculation of withdrawal liability, the employer must do so through arbitration.  An employer that fails to request arbitration waives its right to contest the plan's calculation of withdrawal liability.  Should a plan sponsor later seek to recover withdrawal liability through litigation, a district court cannot "make an independent determination that the plan sponsor's assessment was unreasonable" if the employer did not previously contest it through arbitration.  Seacoast Petroleum Prods., 97 F. Supp. 3d at 98 (citation omitted).

Withdrawal liability "shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand" and "notwithstanding an employer's request for review of the plan's withdrawal liability determination."  Division 1181, 270 F. Supp. 3d at 607 (quoting 29 U.S.C. § 1399(c)(2)).  If an employer fails to make a required payment in accordance with the payment schedule, the plan sponsor must notify the employer.  The employer then has sixty days from the date of receipt of this notification to cure the deficiency.  See id. (quoting 29 U.S.C. § 1399(c)(5)(b)).  If an employer fails to cure the deficiency within sixty days of receipt of the notification, the statute considers the employer to be in "default."  29 U.S.C. § 1399(c)(5).

If an employer is in default, "the plan is entitled to immediate payment of the entire unpaid amount of the employer's withdrawal liability, plus accrued interest from the date of the first scheduled payment timely made." Trs. of Local 531 Pension Fund v. Flexwrap Corp., 818 F. Supp. 2d 585, 589 (E.D.N.Y. 2011). Pursuant to the statute, a plan is also entitled to recover reasonable attorneys' fees, costs, and liquidated damages. Id.

### 2. Application

Plaintiffs have satisfied the procedural requirements of ERISA. First, the Fund's counsel notified G&G in a letter dated September 28, 2017 that G&G had "ceased its contributions and effected a complete withdrawal from the Fund in 2015." (ECF No. 12-10.) The Fund demanded payment of withdrawal liability totaling $274,633.91 through eighty quarterly payments beginning on December 1, 2017. The letter notified G&G of its rights to challenge or seek review of the Fund's determinations and was accompanied by an actuarial report detailing how the withdrawal liability was calculated. The Fund also requested information regarding entities within G&G's controlled group. (Id.) G&G did not pursue arbitration to challenge or seek review of the withdrawal amount or the schedule of payments. To date, G&G has not made any payments toward its withdrawal liability or otherwise communicated with the Fund.

Based on the record before the Court, the September 28, 2017 letter appears to be the last communication between the Fund and G&G. When G&G failed to remit any payment by December 1, 2017, the statute required the Fund to provide G&G with notice of its default and inform G&G that if it failed to cure its default within sixty days, it would be immediately liable for the entirety of the outstanding withdrawal liability. See Division 1181, 270 F. Supp. 3d at 607. The Court finds that Plaintiffs' service of the Complaint on Defendants was sufficient to provide notice of the default. See NYSA-ILA Pension Tr. Fund v. Am. Stevedoring, Inc., No. 12-CV-

5

2506, 2013 WL 1234957, at *5 (S.D.N.Y. Mar. 26, 2013) ("Complaints are sufficient to give notice of withdrawal liability."). Over sixty days have passed since April 9, 2019, the date on which G&G was served with the Complaint, (ECF No. 8), and G&G has failed to cure the default. Plaintiffs have therefore satisfied the procedural requirements necessary to establish G&G's liability. Accordingly, the Fund is entitled to immediate payment of the entire unpaid amount of G&G's withdrawal liability as well as the additional monetary recovery explained below.

Plaintiffs have also represented that "if the Court grants the Plaintiffs' motion for default judgment, and awards them judgment against G&G in this Action, the Plaintiffs seek that the Court dismiss the complaint against defendant John Doe Companies 1-99 without prejudice, and with leave to either reopen this action or bring a new action against any entities that fall within G&G's controlled group, once identified, for the amount of judgment awarded in this Action, plus additional damages, if any." (ECF No. 12-1 at 11.) Accordingly, the claims against John Doe Companies 1-99 are dismissed without prejudice.

**C. Damages**

"'[W]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 189 (2d Cir. 2015) (quoting Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012)). The Court must conduct an inquiry to "ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec.

(USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)).

When an employer fails to make timely withdrawal liability payments, courts treat this failure in the same way as a delinquent contribution. Labarbera v. United Crane & Rigging Servs., Inc., No. 08-CV-3274, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011). In accordance with the applicable statute, 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to the following categories of damages based on G&G's failure to remit the outstanding withdrawal liability payments: "unpaid contributions," "interest on the unpaid contributions," "an amount equal to the greater of—interest on the unpaid contributions, or liquidated damages provided under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the [unpaid contributions] amount determined by the court," "reasonable attorney's fees and costs of the action, to be paid by the defendant," and "such other legal or equitable relief as the court deems appropriate." The Court will address each in turn.

### 1. Withdrawal Liability Principal

When the damages sought consist of outstanding withdrawal liability payments, "an employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper notification will result in the court's adoption of the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated." Labarbera, 2011 WL 1303146, at *5. Therefore, Plaintiffs are entitled to $274,633.91 in withdrawal liability principal, the entirety of the sum proffered by the plan.

### 2. Interest

Pursuant to ERISA, "interest on unpaid contributions shall be determined by using the rate provided under the plan." 29 U.S.C. § 1132(g). The Plan's Trust Agreement specifies that "[a]n

[e]mployer in default shall pay an interest at the rate of six (6%) percent for the period of default." (ECF No. 12-9 at 12.) Plaintiffs are therefore entitled to interest at a rate of six percent per annum. Interest accrues "on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). Here, the first payment was due on December 1, 2017. At a rate of six percent per annum, or $45.15 per day, Plaintiffs are entitled to $38,422.65 in interest.

### 3. Liquidated Damages

ERISA also provides for "liquidated damages either (1) in an amount equal to the interest due and owing or (2) in an amount provided for under the plan, whichever is the greater (provided that liquidated damages under the plan do not exceed 20% of the principal liability)." Trs. of Leather Goods, Handbags, & Novelty Workers' Union Local 1 Joint Ret. Fund v. Cent. Fur Storage Co., No. 18-CV-7224, 2019 WL 3937132, at *10 (E.D.N.Y. Aug. 2, 2019), adopted by, 2019 WL 3936676 (Aug. 20, 2019). Plaintiffs argue that they are entitled to liquidated damages in the amount of $54,926.78, which they say represents twenty percent of the withdrawal liability due. (ECF No. 12-1 at 11.) Plaintiffs, however, do not identify any provision of the Plan's Trust Agreement that provides for liquidated damages, and the Court has not found any such provision. Accordingly, Plaintiffs are awarded liquidated damages in an amount equal to the interest due, $38,422.65. See DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1042 (E.D.N.Y. 1993).

### 4. Attorneys' Fees and Costs

As the prevailing party, Plaintiffs are entitled to an award of attorneys' fees and costs. See 29 U.S.C. § 1132(g)(2)(D). Plaintiffs request $6,481.00 in attorneys' fees and $831.00 in costs.

### a. Attorneys' Fees

To assess the amount of attorneys' fees to award, the Court must identify a "presumptively reasonable fee," which is the product of a reasonable hourly rate and a reasonable number of hours spent litigating the case. Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Cent. Fur Storage, 2019 WL 3937132, at *10.

### i. Hourly Rate

To determine whether an hourly rate is reasonable, the Court will look to "the hourly rates that attorneys routinely charge for comparable work in the Eastern District of New York." Trs. of Local 1034 Pension Tr. Fund v. N. Cancro, Inc., No. 18-CV-7412, 2019 WL 7580098, at *5 (E.D.N.Y. Dec. 18, 2019), adopted by, 2020 WL 207902 (E.D.N.Y. Jan. 14, 2020). Plaintiffs have requested attorneys' fees at a "blended rate" of $250.00 per hour for time expended by their attorneys—two partners and one senior associate—and $120.00 per hour for time expended by their paralegal, resulting in a total of $6,481.00 in attorneys' fees. (ECF No. 12-1 at 13–14.)

The Court finds that $250.00 per hour is reasonable for the work performed by Plaintiffs' attorneys. Plaintiffs also seek to recover $120.00 per hour for the work of a paralegal. (ECF No. 12-1 at 14.) A $95.00 per hour rate is routinely recognized for paralegal work. See, e.g., Local 1034, 2019 WL 7580098, at *7; Trs. of Leather Goods, Handbags, & Novelty Workers' Union Local 1 Joint Ret. Fund v. Crossbay Seashell Fish Mkt., Inc., No. 19-CV-1722, 2019 WL 4418884, at *8 (E.D.N.Y. Aug. 30, 2019), adopted by, 2019 WL 4415621 (E.D.N.Y. Sept. 16, 2019). Furthermore, other courts have scrutinized the billing records of Plaintiffs' paralegal in default judgment ERISA cases and found a $95.00 per hour rate for his work is appropriate. See, e.g., Gesualdi v. Town Holding Corp., No. 18-CV-5744, 2019 WL 5693803, at *7 (E.D.N.Y. Aug. 15, 2019); Gesualdi v. D. Gangi Contracting Corp., No. 18-CV-3773, 2019 WL 1130729, at *8

(E.D.N.Y. Feb. 11, 2019), adopted by, 2019 WL 1128356 (E.D.N.Y. Mar. 12, 2019). Accordingly, the Court will award fees at a rate of $95.00 per hour for paralegal work.

### ii. Hours Expended

To assess whether the total number of hours Plaintiffs' counsel expended is reasonable, the Court must examine the contemporaneous time records showing the date the work was performed, the hours that were spent completing it, and the nature of the work. Cent. Fur Storage, 2019 WL 3937132, at *10. According to the billing records, 25.3 hours of attorney time and 1.3 hours of paralegal time was spent litigating this case. The time expended is reasonable and consistent with the time spent in similar cases brought pursuant to ERISA in this district. See, e.g., Local 1034, 2019 WL 7580098, at *7 (finding twenty-nine attorney hours and 8.5 staff hours reasonable); Gesualdi v. Auburndale Mason Supply, Inc., No. 16-CV-2636, 2017 WL 7087257, at *4 (E.D.N.Y. Dec. 22, 2017), adopted by, 2018 WL 623542 (E.D.N.Y. Jan. 26, 2018) (finding 32.65 attorney hours reasonable); Gesualdi v. Fortunata Carting, Inc., 5 F. Supp. 3d 262, 281 (E.D.N.Y. 2014) ("Courts have found that 25 hours is a typical amount of time to spend on a straightforward ERISA default case.") The Court therefore finds the number of hours expended to be reasonable.

Accordingly, Plaintiffs are awarded $6,325.00 for the attorneys' work and $123.50 for the paralegal's work.

### b. Costs

With respect to costs, prevailing Plaintiffs in ERISA actions are entitled to "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." Trs. of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(K) Sav. Plan v. Temperini Mech., Inc., No. 12-CV-5646, 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (quoting Trs. of the Road Carriers Local 707 Welfare Fund v.

Goldberg, No. 08-CV-884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)). Plaintiffs have requested $400.00 for the filing fee, $383.50 for process server fees, and $47.50 for legal research costs. (ECF No. 12-1 at 14.) The Court finds that these fees are reasonable and supported by documentation. See Local 1034, 2019 WL 7580098, at *7. Accordingly, Plaintiffs are awarded $831.00 in costs.

### III.  CONCLUSION

The Clerk of Court is respectfully directed to enter judgment as follows and to close this case: $274,633.91 in withdrawal liability principal, $38,422.65 in interest, $38,422.65 in liquidated damages, $6,448.50 in attorneys' fees, and $831.00 in costs.

**SO ORDERED.**

Dated:  March 31, 2020
          Central Islip, New York

                                                  /s/ (JMA)
                                            JOAN M. AZRACK
                                            UNITED STATES DISTRICT JUDGE